UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br>        Plaintiffs,<br><br>        v.<br><br>STATE OF VERMONT et al.,<br>        Defendants,<br><br>  and<br><br>NORTHEAST ORGANIC FARMING ASSOCIATION OF VERMONT AND CONSERVATION LAW FOUNDATION,<br>        Defendant-Intervenors. | No. 2:25-cv-00463 |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' RULE 56 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56(b), Defendants submit the following response to Plaintiffs' Rule 56 Statement of Undisputed Material Facts in Support of Plaintiffs' Motion for Summary Judgment. By responding to the facts set forth below, Defendants do not concede that any fact in Plaintiffs' Rule 56 Statement is material to the legal issues raised in their Motion for Summary Judgment. Moreover, because the pending summary judgment motion seeks resolution of the case prior to discovery, Defendants' characterization of any facts as "undisputed" for purposes of the pending motion is not intended as a waiver of Defendant's right to dispute those facts if further proceedings are necessary.

**Vermont Fossil Fuel Production and Greenhouse Gas Emissions**

1. "Vermont has no crude oil reserves or production, nor does it have any petroleum refineries." Vermont, State Profile and Energy Estimates, U.S. Energy Info. Admin. (last updated Dec. 19, 2024), https://perma.cc/L6KW-FGYE.

**Response:**    Undisputed.

2. Vermont "has no natural gas reserves or production." *Id.*

**Response:**    Undisputed to the extent this statement is about fossil gas.

3. Vermont has no "coal mines or coal reserves." *Id.*

**Response:**    Undisputed.

4. Vermont "has the lowest carbon dioxide emissions of any state in the nation." *Id.*

**Response:**    Undisputed that the cited document contains this statement and to the best of the State's knowledge.

5. "According to EPA, in 2022, $CO_2$ emissions accounted for about 80% of total gross U.S. anthropogenic [greenhouse gas] emissions." Energy and the Environment Explained: Where Greenhouse Gases Come From, U.S. Energy Info. Admin. (June 18, 2024), https://perma.cc/SMA8-Q9GN.

**Response:**    Undisputed that the cited document contains this statement and to the best of the State's knowledge.

**Implementation of Climate Superfund Act**

6. On July 24, 2024, State Treasurer Mike Pieciak and Agency of Natural Resources Secretary Julie Moore issued a request for information seeking "expert opinions and advice to inform which fossil fuel companies must be held accountable under Act 122, including how to determine their relative share of climate-related loss and damage that Vermont has experienced over the past 30 years." Treasurer Pieciak and Secretary Moore Invite Expert Input on Climate

Superfund Implementation, State of Vermont: Office of the State Treasurer (July 2024), https://perma.cc/2RES-SECW. This action "mark[ed] the first step in effectuating the historic legislation." *Id.*

  **Response:** Undisputed as to the first statement. Undisputed the press release contained the second statement, but disputed as to any characterization or legal conclusion Plaintiffs attribute to the statement.

  7. In January 2025, the Agency of Natural Resources, in consultation with the State Treasurer, submitted the required "report to the General Assembly detailing the feasibility and progress of carrying out the requirements of this chapter, including any recommendations for improving the administration of the Program." Vt. Stat. Ann. tit. 10, § 599a(a); *see* Act 122, Climate Superfund Cost Recovery Program, Report to the General Assembly (Jan. 15, 2025), https://perma.cc/5UPW-M4B7.

  **Response:** Undisputed.

  8. The report requested more time and funding so the State Treasurer could provide a more "robust" assessment of the cost to Vermont from covered greenhouse gas emissions, given the "significant and consequential work" required. *See* Report to the General Assembly, *supra*, at 8–9.

  **Response:** Undisputed that the report said "the Cost Assessment will require significant and consequential work. Additional time and appropriations are necessary to advance a robust, accurate Cost Assessment." Disputed as to any characterization of this statement that is inconsistent with the statement, which speaks for itself.

### U.S. Foreign Policy

  9. In 1987, Congress enacted the Global Climate Protection Act. *See* Pub. L. No. 100-204, Title XI, §§ 1101–1106, 101 Stat. 1331, 1407–09 (1987), reprinted as note to 15 U.S.C. § 2901; Declaration of Deputy Secretary of State Christopher Landau ("Landau Decl.") ¶ 4.

**Response:** Undisputed.

10. The Global Climate Protection Act provides that the United States should "work toward multilateral agreements" on the issue of greenhouse gas emissions. § 1103(a)(4), 101 Stat. at 1408; Landau Decl. ¶ 4.

**Response:** The Act speaks for itself. Disputed to the extent the statement draws a legal conclusion unsupported by the Act.

11. The Global Climate Protection Act assigns the President and EPA responsibility for devising a "coordinated national policy on global climate change." § 1103(b), 101 Stat. at 1408; Landau Decl. ¶ 4. It also tasks the President and the Secretary of State with coordinating climate change policy in the international arena. § 1103(c), 101 Stat. at 1409; Landau Decl. ¶ 4.

**Response:** The Act speaks for itself. Disputed to the extent the statement draws a legal conclusion unsupported by the Act.

12. The United States is a party to the United Nations Framework Convention on Climate Change of 1992 (the "Framework Convention"). Landau Decl. ¶ 5; https://unfccc.int/resource/docs/convkp/conveng.pdf (last visited September 14, 2025).

**Response:** Undisputed.

13. The Framework Convention was ratified by the President with the advice and consent of the Senate. Landau Decl. ¶ 5; Senate Daily Digest Regarding Treaty Doc. 102-38: "United Nations Framework Convention on Climate Change."

**Response:** Undisputed.

14. The United States is not a party to the Kyoto Protocol of 1997, which imposes upon parties legally binding greenhouse gas emissions limitations and reduction targets that are listed in Framework Convention Annex I (a list that includes the United States). Landau Decl. ¶ 6.

> **Response:** Undisputed that the United States is not a party to the Kyoto Protocol. Otherwise, the Protocol speaks for itself. Disputed to the extent the statement draws a legal conclusion unsupported by the Protocol.

15. Although the United States signed the Kyoto Protocol, President Clinton never submitted it to the Senate for advice and consent. Landau Decl. ¶ 6. Instead, the Senate passed a unanimous resolution expressing disapproval of any protocol or other agreement that provides for disparate treatment of parties based on their development status for the imposition of new commitments to limit or reduce greenhouse gas emissions. Landau Decl. ¶ 6; S. Res. 98, 105th Cong. (1997).

> **Response:** Undisputed that the United States signed the Protocol, President Clinton did not submit it to the Senate, and the Senate passed S. Res. 98 in 1997. Otherwise, the Resolution speaks for itself. Disputed as to any characterizations, opinions, or legal conclusions contained in the statement.

16. President Trump has taken multiple actions that make clear the U.S. foreign policy with respect to energy and climate change. Landau Decl. ¶ 11.

> **Response:** Undisputed that President Trump has taken the actions outlined in the supporting declaration. The State disputes the conclusion that those actions "make clear U.S. foreign policy with respect to energy and climate change." *See* Declaration of Harold Hongju Koh ("Koh Decl.") ¶¶ 11-12, 35. Disputed to the extent the statement draws a legal conclusion.

17. On January 20, 2025, President Trump directed the U.S. Ambassador to the United Nations to submit notification of the United States' withdrawal from the 2015 Paris Climate Agreement. Landau Decl. ¶ 11; *see Putting America First in International Agreements*, Exec. Order No. 14162, § 3(a), 90 Fed. Reg. 8,455, 8,455 (Jan. 20, 2025).

> **Response:** Undisputed.

18. On January 20, 2025, President Trump also declared a national energy emergency pursuant to the National Emergencies Act, 50 U.S.C. 1601 *et seq.*, on the basis that insufficient

5

energy production is a threat to national security and economic prosperity. Landau Decl. ¶ 12; *see Declaring a National Energy Emergency*, Exec. Order No. 14156, § 1, 90 Fed. Reg. 8,433, 8,434 (Jan. 20, 2025).

> **Response:** The State does not dispute that President Trump declared a "national energy emergency" or that he purported to justify doing so "on the basis that insufficient energy production is a threat to national security and economic prosperity." The cited documents do not support any implication that the United States is actually experiencing an "energy emergency" or "insufficient energy production." The State also disputes any legal conclusion that President Trump's declaration is lawful under the National Emergencies Act.

19. President Trump has determined that "[i]t shall be the policy of my Administration to make America energy dominant," and in furtherance of this policy, the United States "must expand all forms of reliable and affordable energy production," including fossil fuels. Landau Decl. ¶ 13; *Establishing the National Energy Dominance Council*, Exec. Order No. 14213, § 1, 90 Fed. Reg. 9,945 (Feb. 14, 2025).

> **Response:** Undisputed that President Trump made these statements in the Executive Order, which speaks for itself. Defendants dispute any legal conclusions or characterizations intended or implied by this statement.

20. President Trump established the National Energy Dominance Council, which includes the Secretary of State, to provide the President with recommendations for increasing affordable energy production, including through elimination of unnecessary regulation and promoting awareness of "the national security concerns with removing reliable and affordable energy sources." Landau Decl. ¶ 13; 90 Fed. Reg. 9,945.

> **Response:** Undisputed that President Trump established the National Energy Dominance Council, which includes the Secretary of State. Otherwise, the Executive Order speaks for itself. Disputed to the extent the statement draws legal conclusions and because the cited documents do not establish that there is "unnecessary regulation" or "national security concerns" or the "remov[al]" of "reliable and affordable energy sources."

6

21. Vermont's Climate Superfund Act conflicts with U.S. foreign policy. Landau Decl. ¶¶ 14–20.

**Response:** Disputed to the extent the statement draws a legal conclusion. Also disputed that the Act conflicts with U.S. foreign policy. Koh Decl. ¶¶ 11-37.

### Vermont Legislators' Statements

22. In a May 2025 op-ed, Vermont State Senator Nader Hashim and Vermont State Representative Martin LaLonde explained that the Vermont Climate Superfund Act requires "some of the world's largest and most profitable fossil fuel corporations" to "pay their fair share and help clean up the climate mess their products and activities have caused." Sen. Nader Hashim & Rep. Martin LaLonde, *Vermont Can Hold Polluters Accountable*, The Caledonian-Record (May 9, 2025), https://perma.cc/7RRW-5W8T.

**Response:** The quoted document speaks for itself. The State does not dispute its contents, the relevant portion of which reads, in full: "Overwhelming scientific consensus tells us that some of the world's largest and most profitable fossil fuel corporations are at the root of the climate crisis. Vermont's Climate Superfund Act applies this established polluter-pays approach to the mounting costs of our climate-related disasters, requiring these corporations to pay their fair share and help clean up the mess their products and activities have caused." The State disputes any characterization of the document inconsistent with its contents.

23. In their July 2024 request for information, Vermont State Treasurer Mike Pieciak explained that his "Office stands ready . . . to ensure the costs of climate change are shouldered by the polluters responsible, not Vermonters," and Vermont Secretary of Natural Resources Julie Moore explained that the Superfund Act will "hold fossil fuel companies accountable" for "climate change." *See supra* ¶ 6.

**Response:** Undisputed these statements were made in the request for information. Otherwise, the document speaks for itself. The State disputes any characterization of the document inconsistent with its contents.

### Impact on National Energy Market

24. In *Chamber of Commerce of the United States, et al. v. Moore, et al.*, 24-cv-1513, the Senior Director, Climate Strategy & Technology, Corporate Strategic Planning at Exxon Mobil Corporation filed a declaration stating that "[t]he imposition of the cost recovery demand on ExxonMobil and other companies is poised to significantly affect the U.S. fossil fuel industry." Chamber Mot. for Summ. J., Case No. 24-cv-1513, Declaration of Vijay Swarup, Dkt. No. 100-6, ¶ 22 (Sept. 15, 2025).

**Response:** The State does not dispute that the cited declaration was filed in the *Chamber* case. The State objects because the material cited in support of the quoted statement cannot be presented in a form that would be admissible in evidence because it is based on speculation about the size of cost recovery demands. It also includes an undefined characterization (i.e., "significantly") that is not a "fact." In any event, insofar as the statement is intended to suggest that cost recovery demands will "significantly affect" energy prices, production levels, or capital investments, the Defendants dispute that statement. Declaration of Don Fullerton, Ph.D. ("Fullerton Decl.") ¶¶ 11-42.

25. The same declaration also explained that "the State of Vermont's significant cost recovery demands would have to be paid, and the funds to make that payment would have to come from somewhere, forcing energy producers like ExxonMobil to make strategic business decisions about capital investments, production volumes, planning, prices, contracts, and personnel." *Id.* ¶ 27.

**Response:** The State does not dispute that the statement was made, but objects that the content of the statement is not supported by material that can be presented in a form that would be admissible in evidence because it is based on speculation regarding the amount of the cost recovery demands and with respect to fossil fuel companies' response to those cost recovery demands. The State does not dispute some energy producers might choose to make business decisions in response to cost recovery demands, but disputes that such business decisions are likely to or necessarily will impact energy prices or production, or fossil fuel companies' capital investments. Fullerton Decl. ¶¶ 11-42.

26. In *Chamber of Commerce of the United States, et al. v. Moore, et al.*, 24-cv-1513, the Senior Vice President of Policy, Economics and Regulatory Affairs at the American Petroleum Institute filed a declaration stating that "[t]he [Superfund] Act could negatively affect energy production and could increase energy costs . . . ." Chamber Mot. for Summ. J., Case No. 24-cv-1513, Declaration of Dustin Meyer, Dkt. No. 100-5, ¶ 17 (Sept. 15, 2025).

**Response:** The State does not dispute that the cited declaration was filed in the *Chamber* case. The State disputes the substance of the quoted statement to the extent it implies the Act necessarily will or is likely to negatively affect energy production and increase energy costs. Fullerton Decl. ¶¶ 11-42.

DATED November 17, 2025

Respectfully submitted,

STATE OF VERMONT

CHARITY R. CLARK
ATTORNEY GENERAL

By: */s/ Jonathan T. Rose*
JONATHAN T. ROSE
*Solicitor General*
LAURA B. MURPHY
*Director, Environmental Protection Unit*
HANNAH W. YINDRA
PATRICK T. GAUDET
*Assistant Attorneys General*
SAMUEL B. STRATTON*
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-3186
jonathan.rose@vermont.gov
laura.murphy@vermont.gov
hannah.yindra@vermont.gov
patrick.gaudet@vermont.gov
sam.stratton@vermont.gov

*Vermont Bar Attorney-Applicant
Admission before this Court pending