UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>              *Plaintiffs,*<br><br>v.<br><br>STATE OF VERMONT et al.,<br><br>              *Defendants,*<br>and<br><br>NORTHEAST ORGANIC FARMING ASSOCIATION OF VERMONT AND CONSERVATION LAW FOUNDATION,<br><br>              *Intervenor-Defendants.* | No. 2:25-cv-00463 |

**INTERVENOR-DEFENDANTS' RESPONSE TO THE UNITED STATES'
RULE 56 STATEMENT OF UNDISPUTED MATERIAL FACTS AND STATEMENT OF
ADDITIONAL UNDISPUTED MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56(b), Intervenor-Defendants submit the following response to Plaintiffs' Rule 56 Statement of Undisputed Material Facts in Support of Plaintiffs' Motion for Summary Judgment, and Intervenor-Defendants' separate Statement of Additional Undisputed Material Facts. By responding to the facts set forth below, Intervenor-Defendants do not concede that any fact in Plaintiffs' Rule 56 Statement is material to the legal issues raised in their Motion for Summary Judgment. Moreover, because the pending summary judgment motions seek resolution of the case prior to discovery, Intervenor-Defendants' characterization of any facts as "undisputed" for purposes of the pending motions is not intended as a waiver of Intervenor-Defendants' right to dispute those facts if further proceedings are necessary.

**Vermont Fossil Fuel Production and Greenhouse Gas Emissions**

1. "Vermont has no crude oil reserves or production, nor does it have any petroleum refineries." Vermont, State Profile and Energy Estimates, U.S. Energy Info. Admin. (last updated Dec. 19, 2024), https://perma.cc/L6KW-FGYE.

**Response:** Undisputed at this time to the best of Intervenor-Defendants' knowledge.

2. Vermont "has no natural gas reserves or production." *Id.*

**Response:** Undisputed at this time to the best of the Intervenor-Defendants' knowledge.

3. Vermont has no "coal mines or coal reserves." *Id.*

**Response:** Undisputed at this time to the best of the Intervenor-Defendants' knowledge.

4. Vermont "has the lowest carbon dioxide emissions of any state in the nation." *Id.*

**Response:** Undisputed that the cited document contains this statement, but Intervenor-Defendants note that the document does not purport to reflect information as of 2025.

5. "According to EPA, in 2022, $CO_2$ emissions accounted for about 80% of total gross U.S. anthropogenic [greenhouse gas] emissions." Energy and the Environment Explained: Where Greenhouse Gases Come From, U.S. Energy Info. Admin. (June 18, 2024), https://perma.cc/SMA8-Q9GN.

**Response:** Undisputed that the cited document contains this statement.

**Implementation of Climate Superfund Act**

6. On July 24, 2024, State Treasurer Mike Pieciak and Agency of Natural Resources Secretary Julie Moore issued a request for information seeking "expert opinions and advice to inform which fossil fuel companies must be held accountable under Act 122, including how to determine their relative share of climate-related loss and damage that Vermont has experienced

over the past 30 years." Treasurer Pieciak and Secretary Moore Invite Expert Input on Climate Superfund Implementation, State of Vermont: Office of the State Treasurer (July 2024), https://perma.cc/2RES-SECW. This action "mark[ed] the first step in effectuating the historic legislation." *Id.*

> **Response:** Undisputed that the request for information contained the first statement, and that the press release contained the second statement. Disputed as to any characterization or legal conclusion Plaintiffs attribute to the statement.

7.    In January 2025, the Agency of Natural Resources, in consultation with the State Treasurer, submitted the required "report to the General Assembly detailing the feasibility and progress of carrying out the requirements of this chapter, including any recommendations for improving the administration of the Program." Vt. Stat. Ann. tit. 10, § 599a(a); *see* Act 122, Climate Superfund Cost Recovery Program, Report to the General Assembly (Jan. 15, 2025), https://perma.cc/5UPW-M4B7.

> **Response:** Undisputed.

8.    The report requested more time and funding so the State Treasurer could provide a more "robust" assessment of the cost to Vermont from covered greenhouse gas emissions, given the "significant and consequential work" required. *See* Report to the General Assembly, *supra*, at 8–9.

> **Response:** Undisputed as to the contents of the statement; disputed as to any characterization Plaintiffs attribute to the statement.

### U.S. Foreign Policy

9.    In 1987, Congress enacted the Global Climate Protection Act. *See* Pub. L. No. 100-204, Title XI, §§ 1101–1106, 101 Stat. 1331, 1407–09 (1987), reprinted as note to 15 U.S.C. § 2901; Declaration of Deputy Secretary of State Christopher Landau ("Landau Decl.") ¶ 4.

**Response:** Undisputed.

10. The Global Climate Protection Act provides that the United States should "work toward multilateral agreements" on the issue of greenhouse gas emissions. § 1103(a)(4), 101 Stat. at 1408; Landau Decl. ¶ 4.

**Response:** Undisputed that the quoted words appear in the statute, which speaks for itself. Disputed to the extent the statement draws a legal conclusion unsupported by the statutory language.

11. The Global Climate Protection Act assigns the President and EPA responsibility for devising a "coordinated national policy on global climate change." § 1103(b), 101 Stat. at 1408; Landau Decl. ¶ 4. It also tasks the President and the Secretary of State with coordinating climate change policy in the international arena. § 1103(c), 101 Stat. at 1409; Landau Decl. ¶ 4.

**Response:** Undisputed that the quoted words appear in the statute, which speaks for itself. Disputed to the extent the statement draws a legal conclusion unsupported by the Act.

12. The United States is a party to the United Nations Framework Convention on Climate Change of 1992 (the "Framework Convention"). Landau Decl. ¶ 5; https://unfccc.int/resource/docs/convkp/conveng.pdf (last visited September 14, 2025).

**Response:** Undisputed.

13. The Framework Convention was ratified by the President with the advice and consent of the Senate. Landau Decl. ¶ 5; Senate Daily Digest Regarding Treaty Doc. 102-38: "United Nations Framework Convention on Climate Change."

**Response:** Undisputed.

14. The United States is not a party to the Kyoto Protocol of 1997, which imposes upon parties legally binding greenhouse gas emissions limitations and reduction targets that are listed in Framework Convention Annex I (a list that includes the United States). Landau Decl. ¶ 6.

**Response:**   Undisputed that the United States is not a party to the Kyoto Protocol. Otherwise, the Protocol speaks for itself. Disputed to the extent the statement draws a legal conclusion unsupported by the Protocol.

15. Although the United States signed the Kyoto Protocol, President Clinton never submitted it to the Senate for advice and consent. Landau Decl. ¶ 6. Instead, the Senate passed a unanimous resolution expressing disapproval of any protocol or other agreement that provides for disparate treatment of parties based on their development status for the imposition of new commitments to limit or reduce greenhouse gas emissions. Landau Decl. ¶ 6; S. Res. 98, 105th Cong. (1997).

**Response:**   Undisputed that the United States signed the Protocol, President Clinton did not submit it to the Senate, and the Senate passed S. Res. 98 in 1997. Otherwise, the Resolution speaks for itself. Disputed as to any characterizations, opinions, or legal conclusions contained in the statement.

16. President Trump has taken multiple actions that make clear the U.S. foreign policy with respect to energy and climate change. Landau Decl. ¶ 11.

**Response:**   Undisputed that President Trump has directed the U.S. Ambassador to the United Nation to submit notification of withdrawal from the Paris Agreement, issued Executive Order 14,156, issued Executive Orders 14,213, and issued Executive Order 14,260 as outlined in the supporting declaration. *See* Landau Decl. ¶¶ 11-14. Intervenor-Defendants object that it is ambiguous what specifically those actions "make clear," and therefore dispute what those actions "make clear." Intervenor-Defendants dispute that the federal government's energy and climate-change policies have always reflected President Trump's priorities. *See* Declaration of Harold Koh ("Koh Decl.") ¶¶ 20-22, 27-28, ECF No. 53-3 (*United States* case). In addition, paragraph 16 is not material to the pending motions because the policies cited in the supporting Declaration neither create a clear conflict nor are "fit" to preempt the Vermont Act.

17. On January 20, 2025, President Trump directed the U.S. Ambassador to the United Nations to submit notification of the United States' withdrawal from the 2015 Paris Climate

5

Agreement. Landau Decl. ¶ 11; *see Putting America First in International Agreements*, Exec. Order No. 14162, § 3(a), 90 Fed. Reg. 8,455, 8,455 (Jan. 20, 2025).

> **Response:** Undisputed.

18.   On January 20, 2025, President Trump also declared a national energy emergency pursuant to the National Emergencies Act, 50 U.S.C. 1601 *et seq.*, on the basis that insufficient energy production is a threat to national security and economic prosperity. Landau Decl. ¶ 12; *see Declaring a National Energy Emergency*, Exec. Order No. 14156, § 1, 90 Fed. Reg. 8,433, 8,434 (Jan. 20, 2025).

> **Response:** Intervenor-Defendants do not dispute that President Trump issued a document bearing the title "Declaring a National Energy Emergency" or that he purported to justify doing so "on the basis that insufficient energy production is a threat to national security and economic prosperity." Intervenor-Defendants dispute that the cited documents establish that the United States is actually experiencing an "energy emergency" or "insufficient energy production." Intervenor-Defendants also dispute any legal conclusion that President Trump's declaration is lawful under the National Emergencies Act. Intervenor-Defendants further state that this dispute is not material to the resolution of the pending motions because President Trump's declaration of a national energy emergency is not a foreign policy that creates a clear conflict with or is "fit" to preempt the Vermont Act.

19.   President Trump has determined that "[i]t shall be the policy of my Administration to make America energy dominant," and in furtherance of this policy, the United States "must expand all forms of reliable and affordable energy production," including fossil fuels. Landau Decl. ¶ 13; *Establishing the National Energy Dominance Council*, Exec. Order No. 14213, § 1, 90 Fed. Reg. 9,945 (Feb. 14, 2025).

> **Response:** Undisputed that President Trump made these statements in the Executive Order, which speaks for itself. Intervenor-Defendants dispute that expanding the production of fossil fuel is necessary to supply the United States with reliable and affordable energy. Regardless, this dispute is not material because the existence of a policy to expand fossil fuel production on its own does not preempt state law.

6

20. President Trump established the National Energy Dominance Council, which includes the Secretary of State, to provide the President with recommendations for increasing affordable energy production, including through elimination of unnecessary regulation and promoting awareness of "the national security concerns with removing reliable and affordable energy sources." Landau Decl. ¶ 13; 90 Fed. Reg. 9,945.

**Response:** Undisputed that President Trump established the National Energy Dominance Council, which includes the Secretary of State. Otherwise, the Executive Order speaks for itself. Disputed to the extent the statement draws legal conclusions and because the cited documents do not establish that there are "unnecessary regulation[s]," or that "reliable and affordable energy sources" are being removed. Regardless, this dispute is not material to the resolution of the pending motions because the Council neither creates a clear conflict nor are its opinions "fit" to preempt the Vermont Act.

21. Vermont's Climate Superfund Act conflicts with U.S. foreign policy. Landau Decl. ¶¶ 14–20.

**Response:** Disputed to the extent the statement draws a legal conclusion. Intervenor-Defendants also dispute that the supporting declaration shows that the Vermont Act conflicts with U.S. foreign policy. Executive Order 14,260 expresses a policy disagreement with statutes like the Vermont Act but is not based on an executive branch power "fit" to preempt state law. Intervenor-Defendants object to the speculative statements in the declaration, which lack foundation, that the Vermont Act will interfere with emission reduction negotiations and the United States' withdrawal from the Paris Agreement. *See* Landau Decl. ¶¶ 16-18. The declarant does not provide a foundation for these claims. To the extent a further response is required, Intervenor-Defendants dispute that the retroactive payments required by the Vermont Act prevent the United States' ability to meet its existing international obligations or its ability to withdraw from those obligations. *See* Koh Decl. ¶¶ 27, 31-33, 35. Intervenor-Defendants further dispute that the Vermont Act interferes with the United States' emission reduction negotiations with other countries. Retroactive liability on fossil fuel producers has not been part of those negotiations. *See* Koh Decl. ¶¶ 31-34. Intervenor-Defendants object to the Landau statements that the Vermont Act will make energy production more expensive including through potential retaliation against U.S. fossil fuel companies operating in foreign countries as speculative and lacking in foundation; as

7

such, those statements should be disregarded. *See* Landau Decl. ¶¶ 15, 18-19. Regardless, these assertions are not material to the resolution of the pending motions because the existence of international negotiations around a subject area is not sufficient on its own to preempt state law.

**Vermont Legislators' Statements**

22.     In a May 2025 op-ed, Vermont State Senator Nader Hashim and Vermont State Representative Martin LaLonde explained that the Vermont Climate Superfund Act requires "some of the world's largest and most profitable fossil fuel corporations" to "pay their fair share and help clean up the climate mess their products and activities have caused." Sen. Nader Hashim & Rep. Martin LaLonde, *Vermont Can Hold Polluters Accountable*, The Caledonian-Record (May 9, 2025), https://perma.cc/7RRW-5W8T.

**Response:**   Undisputed that the op-ed contained the quoted language.

23.     In their July 2024 request for information, Vermont State Treasurer Mike Pieciak explained that his "Office stands ready . . . to ensure the costs of climate change are shouldered by the polluters responsible, not Vermonters," and Vermont Secretary of Natural Resources Julie Moore explained that the Superfund Act will "hold fossil fuel companies accountable" for "climate change."  *See supra* ¶ 6.

**Response:**   Undisputed that these statements were made in the press release discussing the request for information.

**Impact on National Energy Market**

24.     In *Chamber of Commerce of the United States, et al. v. Moore, et al.*, 24-cv-1513, the Senior Director, Climate Strategy & Technology, Corporate Strategic Planning at Exxon Mobil Corporation filed a declaration stating that "[t]he imposition of the cost recovery demand on ExxonMobil and other companies is poised to significantly affect the U.S. fossil fuel industry."

Chamber Mot. for Summ. J., Case No. 24-cv-1513, Declaration of Vijay Swarup, Dkt. No. 100-6, ¶ 22 (Sept. 15, 2025).

> **Response:** Intervenor-Defendants do not dispute that the cited declaration was filed in the *Chamber* case and that paragraph 22 of the declaration includes that clause. Intervenor-Defendants object to the substance of the quoted statement because it is speculative and lacks foundation, including because the amount of the cost recovery demands has not yet been established and because the declarant does not provide a foundation for this assertion. Intervenor-Defendants dispute the speculation that the cost recovery demands will "significantly affect the U.S. fossil fuel industry," including energy prices, production levels, or capital investments. *See* Declaration of Don Fullerton ("Fullerton Decl.") ¶¶ 27-42, ECF No. 109-3 (*Chamber* case), ECF No. 53-2 (*United States* case).

25. The same declaration also explained that "the State of Vermont's significant cost recovery demands would have to be paid, and the funds to make that payment would have to come from somewhere, forcing energy producers like ExxonMobil to make strategic business decisions about capital investments, production volumes, planning, prices, contracts, and personnel." *Id.* ¶ 27.

> **Response:** Intervenor-Defendants do not dispute that the quoted statement appears in the declaration or that funds to pay a cost assessment would have to come from somewhere. Intervenor-Defendants object to the remainder of the statement as speculative and lacking foundation, including because the amount of any assessment has not yet been established. In addition, the statement lacks foundation for the conclusion that an assessment in any amount would "force" strategic business decisions in any of the listed areas, and lacks foundation that any other producer of energy would be forced to make business decisions in any of those areas. The statement also lacks foundation by failing to discuss any specific investments, production volumes, planning, prices, contracts, or personnel that would be affected and why. Intervenor-Defendants dispute that any such changes would be needed, for the reasons explained in the Fullerton Declaration. *See* Fullerton Decl. ¶¶ 27-42.

26. In *Chamber of Commerce of the United States, et al. v. Moore, et al.*, 24-cv-1513, the Senior Vice President of Policy, Economics and Regulatory Affairs at the American Petroleum Institute filed a declaration stating that "[t]he [Superfund] Act could negatively affect energy

9

production and could increase energy costs . . . ." Chamber Mot. for Summ. J., Case No. 24-cv-1513, Declaration of Dustin Meyer, Dkt. No. 100-5, ¶ 17 (Sept. 15, 2025).

**Response:** Intervenor-Defendants do not dispute that the cited declaration was filed in the *Chamber* case or that the quoted statement appears in the declaration. Intervenor-Defendants object to the substance of the statement as speculative and lacking foundation, including because the amount of any assessment has not yet been established. The statement lacks foundation for the conclusion that an assessment could negatively affect energy production and could increase energy costs. It does not include any analysis supporting this conclusory statement. Intervenor-Defendants dispute that there would be any impact on production or energy costs, for the reasons explained in the Fullerton Declaration. *See* Fullerton Decl. ¶¶ 30-42.

## STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS

### I. Vermont Climate Superfund Act

1. The Vermont State Treasurer has not completed the cost assessment required under the Climate Superfund Act, Vt. Stat. Ann. tit. 10, § 599c. The Treasurer intends to complete the assessment on or around January 15, 2027. Declaration of Sue Minter ¶ 6, ECF No. 110-4 (*Chamber* case), ECF No. 54-4 (*United States* case).

2. The Vermont Agency of Natural Resources has not completed the proposed or final rulemakings required under the Climate Superfund Act. The Agency intends to complete the rulemakings on or around January 1, 2028. Declaration of Jane Lazorchak ¶ 5, ECF No. 110-3 (*Chamber* case), ECF No. 54-3 (*United States* case). The Agency intends to issue cost recovery demands on or around July 1, 2028. *Id.* ¶ 8.

### II. The Economic Impact of Cost Recovery Demands

3. The Act will have no impact on the market price of fossil fuels and will provide no incentive for any company to change its production, sales, investments, or technology. *See* Fullerton Decl. ¶¶ 33, 40-42.

4.     Under standard economic models, firms will continue to produce and sell goods (such as fossil fuels) whenever they can earn a profit—that is, so long as the sale price exceeds the cost of producing an additional unit (i.e., the "marginal cost"). Under these models, market price depends on marginal costs and does not depend on fixed costs, which are costs that do not vary with the amount of goods produced. *See id.* ¶¶ 14-20.

5.     The Act's cost recovery demands will impose a fixed cost, not a marginal cost, because they are based on greenhouse gas emissions from fossil fuels extracted or refined in the past and do not depend on companies' current or future decisions about how much to produce. *See id.* ¶¶ 15, 18, 30-31.

6.     Because the Act does not affect the marginal cost of production, it will not affect the market price of fossil fuels. *See id.* ¶¶ 15, 18, 30-31. Because it will not affect the market price of fossil fuels, it will not affect the price or quantities of final energy goods produced from fossil fuels, such as electricity or motor fuels. *See id.* ¶¶ 18, 32, 41.

7.     Instead, as a one-time retroactive assessment, the Act's cost recovery demands impose a fixed cost that will be absorbed by the companies and would not be passed on to consumers. *See id.* ¶¶ 30-31.

8.     The Act is not an "economic regulation," as understood by economists, because it will not change the incentives for companies to produce and sell fossil fuels, will not change the cost of fossil fuels to purchasers, will not change any consumer's use of energy, and will not reduce current or future greenhouse gas emissions. *See id.* ¶¶ 27-32.

9.     Because the Act will not affect the current or future marginal cost of new production, it will not affect a company's estimate of potential profit from future production, and

therefore will not affect fossil fuel companies' incentives to invest in new technology or infrastructure. *See id.* ¶¶ 33-34, 42.

10. Because the Act will not affect fossil fuel prices or production or affect consumer demand, it will not affect the future availability of fossil fuels. *See id.* ¶¶ 11, 35, 42.

### III.    U.S. Foreign Policy

11. The principle that polluters pay for the damage that they cause is well established in international environmental law as reflected in agreements and treaties. *See* Declaration of Harold Koh ¶¶ 12, 16-17. The United States is a party to or signed treaties incorporating the "polluter pays" principle. *See id.* ¶ 17.

12. There is no foreign treaty or federal statute that expressly forbids a state from requesting payment from a foreign company based on its past fossil fuel production or refining. *See id*. ¶¶ 12, 19, 31.

13. The Act does not interfere with the federal government's ability to meet existing limited international obligations under the Framework Convention or Paris Agreement. *See id*. ¶¶ 20, 27-28. The Act does not interfere with the United States' ability to withdraw from the Paris Agreement. *See id*. ¶¶ 31-33, 35.

14. The past two decades of international negotiations created around climate change have focused on governmental and intergovernmental obligations. *See id.* ¶ 34. The negotiations have not addressed questions of corporate liability. *See id.* Because the current administration has announced its intent to withdraw from the Paris Agreement, the United States is not currently engaged in any ongoing international climate negotiations under the Framework Convention that could be disrupted. *See id.* ¶ 35.

15. The federal government's prior statements about opposing "liability and compensation for loss and damage" was in reference to provisions that would make the United States government liable to other countries. *See id.* ¶¶ 31-32. Those statements did not opine on the liability of foreign fossil fuel producers or refiners.

Dated: November 21, 2025                          Respectfully submitted,

                                                  */s/ Bridget Asay*
                                                  Bridget Asay
                                                  Michael Donofrio
                                                  STRIS & MAHER LLP
                                                  15 East State Street, Suite 2
                                                  Montpelier, VT 05602
                                                  Phone: (802) 858-4285
                                                  basay@stris.com

                                                  *Counsel for Northeast Organic Farming Association of Vermont*


                                                  */s/ Adeline S. Rolnick*
                                                  Adeline S. Rolnick
                                                  Natural Resources Defense Council, Inc.
                                                  1152 15th Street, Suite 300
                                                  Washington, DC 20005
                                                  Phone: (202) 513-6240
                                                  arolnick@nrdc.org

                                                  Mitchell S. Bernard
                                                  Natural Resources Defense Council, Inc.
                                                  40 West 20th Street, 11th Floor
                                                  New York, NY 10011
                                                  Phone: (212) 727-4469
                                                  mbernard@nrdc.org

                                                  *Counsel for Northeast Organic Farming Association of Vermont and Conservation Law Foundation*

        <u>*/s/ Elena M. Mihaly*</u>
        Elena M. Mihaly
        Conservation Law Foundation, Inc.
        15 East State Street, Ste. 4
        Montpelier, VT 05602
        Phone: (802) 622-3012
        emihaly@clf.org

        *Counsel for Conservation Law Foundation*