UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

---

UNITED STATES OF AMERICA and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

      *Plaintiffs*,

      v.

STATE OF VERMONT, et al.,

      *Defendants*,

  and

NORTHEAST ORGANIC FARMING ASSOCIATION OF VERMONT AND CONSERVATION LAW FOUNDATION,

      *Intervenor-Defendants*.

No. 2:25-cv-00463

---

**PLAINTIFFS' RESPONSE TO INTERVENOR-DEFENDANTS'**
<u>**NOTICE OF SUPPLEMENTAL AUTHORITY**</u>

In its final rule, *Rescission of the Greenhouse Gas Endangerment Finding and Motor Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act*, 91 Fed. Reg. 7686 (Feb. 18, 2026), the U.S. Environmental Protection Agency ("EPA") concluded that it lacked authority under Clean Air Act section 202(a)(1) to prescribe greenhouse gas emission standards for new motor vehicles and engines based on global climate change concerns. EPA concluded that such emissions do not satisfy section 202(a)(1)'s regulatory trigger, which authorizes EPA to regulate only

1

if air pollutant emissions "cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a)(1); 91 Fed. Reg. at 7711. For several reasons, the final rule changes nothing about this case or the United States' arguments.[1]

To begin, Intervenor-Defendants do not dispute that the final rule is completely irrelevant to almost all of the United States' claims. The Clean Air Act aside, Vermont's Climate Superfund Act still (1) intrudes on an inherently federal area and is thus precluded by our constitutional structure; (2) exceeds the territorial limits of state authority under the Constitution's horizontal separation of powers; (3) interferes with the federal government's exclusive authority over foreign affairs; and (4) violates the Commerce Clause, as applied to both interstate and foreign commerce.

Take the United States' lead constitutional argument. The Constitution "implicitly forbids" applying state law when the "interstate nature of the controversy makes it inappropriate for state law to control." *Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230, 246 (2019) (cleaned up). Interstate air pollution is such a controversy, *City of New York v. Chevron Corp.*, 993 F.3d 81, 90-92 (2d Cir. 2021), which is why federal common law governed the area before Congress enacted the Clean Air Act. After all, "where 'federal common law exists, it is because state law cannot be used'" as a constitutional matter. *Id.* at 98 (quoting *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 313 n.7 (1981)); *Am. Elec. Power Co. (AEP) v. Connecticut*, 564 U.S. 410, 421 (2011) (federal common law applies "where the basic scheme of the Constitution so demands"); *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) (certain subjects involve "uniquely federal interests" and are "so committed by the Constitution … to federal control that state law is pre-

---

[1] Intervenor-Defendant Conservation Law Foundation, as well as Natural Resources Defense Council, which serves as counsel to both Intervenor-Defendants, have challenged the final rule in the D.C. Circuit. *See* Pet. for Review, *Am. Pub. Health Ass'n v. EPA*, No. 26-1037 (D.C. Cir. Feb. 18, 2026). It is inconsistent to argue here that the final rule compels dismissal of the United States' Clean Air Act preemption claim while simultaneously arguing in another court that the final rule is contrary to law and should be vacated.

empted and replaced" by "federal common law"). So even if the Superfund Act weren't preempted by the Clean Air Act (it is), our constitutional structure would still preclude it and require that federal common law govern. *See City of New York*, 993 F.3d at 92; *see also* U.S. Reply at 36-37, Dkt. No. 65 (Dec. 15, 2025). Intervenor-Defendants' contrary position—that state law may fill any purported gaps in the Clean Air Act—cannot be squared "with the fact that federal common law governed this issue in the first place." *City of New York*, 993 F.3d at 98. Simply put, imposing liability for global greenhouse gas emissions is "beyond the limits of state law." *Id.* at 92.

But Intervenor-Defendants are also incorrect that the final rule conflicts with the United States' position here on Clean Air Act preemption. As the final rule makes clear, EPA's position is that the Clean Air Act still preempts the Superfund Act. 91 Fed. Reg. at 7739 (stating that the Clean Air Act "continues to preempt state common-law claims and statutes that seek to regulate out-of-state emissions"); Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards: Response to Comments 297 (Feb. 2026), https://perma.cc/JW4M-E3N3 (noting that the Clean Air Act "does not empower states to apply their own law to control emissions occurring outside their own jurisdiction"). That position is correct for at least four reasons.

*First*, the final rule, which concerns only vehicle emissions under section 202(a)(1), has a much narrower scope than the Superfund Act, which targets emissions from all sources. *See* Vt. Stat. Ann. tit. 10, § 596(7) (covering "the total quantity of greenhouse gases released into the atmosphere … resulting from the use of fossil fuels extracted or refined by an entity during the covered period," regardless the source of those emissions). And the final rule does not disturb EPA's regulation of greenhouse gas emissions in other contexts, including its efforts to control emissions by regulating the content of transportation fuels and oil and gas production. *See, e.g.*, 42 U.S.C. § 7545(o) (Renewable Fuel Standards Program); *Ctr. for Biological Diversity v. EPA*,

3

141 F.4th 153, 162 (D.C. Cir. 2025) ("The [Renewable Fuel Standards] Program is generally recognized as Congress's attempt to promote renewable energy and lower greenhouse gas emissions by requiring the petroleum industry to introduce increasing volumes of renewable fuel from year to year."); *Standards of Performance for New, Reconstructed, and Modified Sources and Emissions Guidelines for Existing Sources: Oil and Natural Gas Sector Climate Review*, 89 Fed. Reg. 16820 (Mar. 8, 2024) (regulation of methane emissions from oil and gas production); *see also* U.S. MSJ at 39, Dkt. No. 50-1 (Sept. 15, 2025); U.S. Reply at 30 n.10. Thus, even if the final rule affected preemption as to vehicle emissions (it does not, as explained below), the Superfund Act would still be preempted because it imposes liability for emissions from *all* sources and in *all* contexts, not just *vehicle* emissions. And because the Superfund Act does not (and cannot) distinguish between vehicle and non-vehicle emissions in imposing liability for alleged climate-related harms, its regulation of the latter cannot be severed from its regulation of the former. The statute is therefore preempted in its entirety.

*Second*, as to vehicle emissions, the Clean Air Act *expressly* preempts state emission standards for new motor vehicles and engines. 42 U.S.C. § 7543(a); *see* 91 Fed. Reg. at 7739 (explaining that the Clean Air Act "continue[s] to preempt 'any' State or local law, regulation, or cause of action that adopts or attempts to enforce 'any standard relating to the control of emissions'" from new motor vehicles and engines). This refutes Intervenor-Defendants argument, which is premised on the theory that the final rule creates a gap in the preemptive force of the Clean Air Act for vehicle emissions. There is no gap at all because Congress expressly preempted state vehicle emission standards.

*Third*, the Clean Air Act still preempts the Superfund Act under the Second Circuit's binding precedent in *City of New York*. As before, the legal analysis here follows *City of New York* to

a tee.  When Congress enacted the Clean Air Act, it replaced the federal common law of interstate emissions with a comprehensive statutory framework for regulation.  *AEP*, 564 U.S. at 424; *City of New York*, 993 F.3d at 95-98.  And "resorting to state law on a question previously governed by federal common law is permissible only to the extent authorized by federal statute."  *City of New York*, 993 F.3d at 99 (cleaned up); U.S. MSJ at 28; U.S. Reply at 18-19.

In the final rule, EPA concluded that section 202(a)(1) does not authorize the agency to prescribe standards for greenhouse gas emissions from new motor vehicles based on global climate change concerns.[2]  But the question under *City of New York* is not whether a specific provision of the Clean Air Act authorizes *EPA* to regulate—the question is whether the Clean Air Act authorizes *Vermont* to do so.  U.S. Reply at 30 n.10; *City of New York*, 993 F.3d at 99-100.  And whatever section 202(a)(1) authorizes EPA to do, the Clean Air Act plainly does not authorize what Vermont seeks to do through the Superfund Act.  *See* U.S. MSJ at 30 (explaining that, under *City of New York* and *Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987), the Clean Air Act authorizes state-imposed liability *only* under the law of the source state).  The Superfund Act is thus preempted under the Second Circuit's analysis in *City of New York*.

*Fourth*, the Clean Air Act still preempts the Superfund Act under traditional field and conflict preemption principles.  Field preemption remains because the Clean Air Act limits the reach of state law to emissions originating within the state's borders.  It leaves no room for states to

---

[2] The Supreme Court has held that greenhouse gases fall within the scope of the Clean Air Act—and are thus subject to potential regulation under its various provisions—because they qualify as "air pollutants" under the Act-wide definition in section 302(g) of the statute.  *Massachusetts v. EPA*, 549 U.S. 497, 532 (2007); *see* 91 Fed. Reg. at 7717.  Even so, EPA is not authorized to regulate unless an "air pollutant" emission meets the standard for regulation under the specific Clean Air Act provision EPA seeks to invoke.  *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 317-19 (2014).  In the final rule, EPA simply concluded that section 202(a)(1) does not authorize EPA to regulate greenhouse gas emissions from new motor vehicles and engines based on concerns about global climate change.

apply their own law to out-of-state emissions—federal law occupies that field. *City of New York*, 993 F.3d at 99-100 (citing *Ouellette*, 479 U.S. at 497); 91 Fed. Reg. at 7793 (relying on *City of New York* and *Ouellette* in concluding that the Clean Air Act "continues to preempt state … statutes that seek to regulate out-of-state emissions"); U.S. Reply at 31-33.

Conflict preemption remains as well. The Constitution and the Clean Air Act do not create the either-or legal regime proposed by Intervenor-Defendants, in which out-of-state emissions are either regulated by EPA or subjected to a patchwork of standards set by the fifty states. Instead, the Constitution requires that federal law govern the area, the Clean Air Act implements that requirement by establishing the conditions under which air pollutants may be regulated by EPA, and EPA decides whether and how to regulate air pollutants that satisfy those conditions. *See* U.S. MSJ at 29, 38-39.

The final rule did not change this legal framework. In contending otherwise, Intervenor-Defendants misunderstand both the Clean Air Act and the final rule. The Clean Air Act establishes distinct regulatory conditions for various emission sources. *See, e.g.*, 42 U.S.C. §§ 7411 (stationary sources), 7521 (new motor vehicles), 7545 (fuels), 7571 (aircraft). Under the statute, emissions are generally permitted unless EPA decides to act after determining that the regulatory condition is satisfied for the applicable source category. *AEP*, 564 U.S. at 426; U.S. MSJ at 29. If the relevant condition is *not* met, that is generally the end of the matter—states may not fill the regulatory void absent authorization by the Clean Air Act itself. *Cf. AEP*, 564 U.S. at 426 ("The Clean Air Act is no less an exercise of [Congress's] 'considered judgment' concerning the regulation of air pollution because it permits emissions *until* EPA acts."); *see also Ouellette*, 479 U.S. at 492 (explaining that the Clean Water Act's "pervasive regulation" means "that the only state suits that remain available are those specifically preserved by the Act"); *City of New York*, 993 F.3d at 99

(explaining that the Clean Air Act's savings clauses "permit states to create and enforce their own emissions standards applicable to in-state polluters").

The upshot for conflict preemption is that the Clean Air Act sets a specific threshold for regulating vehicle emissions that—as explained in the final rule—does not allow EPA to prescribe emission standards for greenhouse gases in response to global climate change, because to do so papers over the requirement that emissions "cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a)(1). This result reflects Congress's "considered judgment" that greenhouse gas emissions should not be regulated under section 202(a)(1) based on global climate change concerns. *AEP*, 564 U.S. at 426. Vermont has "no warrant" to "upset" that judgment with a different regulatory standard based on retroactive strict liability, including for emissions originating beyond the state's borders. *Id.* That is not the standard Congress set forth in the Clean Air Act—indeed, Congress expressly preempted state emission standards for new motor vehicles. *See* 42 U.S.C. § 7543(a). And it is Congress's standard—not EPA's action or lack thereof—that matters for preemption here.

For all these reasons, the final rule is entirely consistent with the United States' position in this case. The Court should enter summary judgment for the United States.[3]

---

[3] Intervenor-Defendants also note that the Supreme Court recently granted certiorari in *Suncor Energy, Inc. v. County Commissioners of Boulder County*, No. 25-170. That case involves a state tort suit much like the one in *City of New York*, which already controls the outcome here.

        Respectfully submitted,

        ADAM R.F. GUSTAFSON
        *Principal Deputy Assistant Attorney General*
        ROBERT N. STANDER
        *Deputy Assistant Attorney General*
        JUSTIN D. HEMINGER
        *Acting Deputy Assistant Attorney General*

        /s/ *Riley W. Walters*
        RILEY W. WALTERS
        *Counsel*
        JOHN K. ADAMS
        *Senior Counsel*
        U.S. Department of Justice
        Environment and Natural Resources Division
        950 Pennsylvania Ave., N.W.
        Washington, D.C. 20530
        (202) 514-5442
        Riley.Walters@usdoj.gov

March 13, 2026
Washington, D.C.

## CERTIFICATE OF SERVICE

      I hereby certify that on March 13, 2026, I electronically filed the foregoing response using the CM/ECF system, which electronically served all counsel of record.

Dated: March 13, 2026                 /s/ *Riley W. Walters*
                                                  RILEY W. WALTERS
                                                  *Counsel*
                                                  U.S. Department of Justice
                                                  Environment and Natural Resources Division
                                                  950 Pennsylvania Ave., N.W.
                                                  Washington, D.C. 20530
                                                  (202) 514-5442
                                                  Riley.Walters@usdoj.gov