# ATTACHMENT A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF CALIFORNIA et al.,<br><br>Defendants. | Case No. 2:25-cv-06230-MCS-AGR<br><br>**ORDER RE: MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 58–61, 67)** |

## I. INTRODUCTION

Seeking to enforce the pecking order between federal and state laws, the United States of America brings this action for declaratory and injunctive relief against the State of California and its officers arguing that the federal Egg Products Inspection Act ("EPIA") preempts California laws and regulations governing the sale and shipment of eggs produced by hens confined in certain conditions. (*See generally* FAC, ECF No. 47.) The Court previously authorized a clutch of intervenors to participate in the case. (Order Gr. Mots. to Intervene, ECF No. 56.)

Now pending before the Court are five motions: (1) a motion to dismiss by Defendant-Intervenors Center for a Humane Economy and Animal Wellness Action, (CHE Mot., ECF No. 58-1); (2) a motion to dismiss by Defendant-Intervenors Humane World for Animals, Animal Legal Defense Fund, Animal Equality, The Humane League, Farm Sanctuary, Compassion in World Farming, Inc., and Animal Outlook, (HWA Mot., ECF No. 59-1); (3) a motion to dismiss by Defendants the State of California; Gavin C. Newsom, in his official capacity as Governor of California; Karen Ross, in her official capacity as Secretary of the California Department of Food and Agriculture; Erica Pan, in her official capacity as Director of the California Department of Public Health; and Rob Bonta, in his official capacity as Attorney General of California, (CA Mot., ECF No. 60); (4) a motion for summary judgment by Defendant-Intervenor Association of California Egg Farmers, (ACEF Mot., ECF No. 61-1); and (5) a motion for summary judgment by Plaintiff United States of America, (USA Mot., ECF No. 67-1). The motions are fully briefed. (CHE Reply, ECF No. 70; HWA Reply, ECF No. 72; CA Reply, ECF No. 73; ACEF Reply, ECF No. 71; USA Reply, ECF No. 74.) The Court heard oral argument on February 23, 2026. (Mins., ECF No. 75.)

For the following reasons, the Court grants the motions to dismiss the complaint based on Plaintiff's failure to allege facts supporting a cognizable theory of standing. The Court reaches no other issues presented in the motions and grants Plaintiff leave to amend.

## II. BACKGROUND

In 1970, Congress passed the EPIA to protect the health and welfare of consumers with respect to eggs and egg products. 21 U.S.C. § 1031. The EPIA provides that, "[f]or eggs which have moved or are moving in interstate or foreign commerce, . . . no State or local jurisdiction may require the use of standards of quality, condition, weight, quantity, or grade which are in addition to or different from the official Federal standards" set forth in the EPIA. *Id.* § 1052(b). The United States contends that California Health and Safety Code sections 25990(b)(3)–(4) and 25996, and 3 California Code of Regulations sections 1320.1 and .4, laws and regulations that prohibit the sale of eggs from hens confined under certain "cruel" conditions, run a-fowl of this preemption provision. (*See generally* FAC ¶¶ 27–52, 59, 63, 66.)

According to the United States, California's laws and regulations "ha[ve] contributed to the historic rise in egg prices" and "have diminished the purchasing power and prosperity of the American worker." (*Id.* ¶¶ 1–2; *see also id.* ¶¶ 5, 8.) The United States asserts that "it is the prerogative of the federal government alone to regulate the quality, inspection, and packaging of eggs," and that "the Supremacy Clause does not permit California to inflate egg prices by imposing additional standards that regulate the quality of eggs." (*Id.* ¶¶ 6–7.) On this basis, the federal government seeks a declaration that the California laws and regulations at issue are preempted by the EPIA, and an injunction precluding California from enforcing these laws and regulations. (*Id.*, Prayer for Relief.)

## III. LEGAL STANDARD

The standard governing motions to dismiss raising facial challenges to constitutional standing rules the roost here. Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of standing. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). In the context of a Rule

12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the claims. *Id.* at 1122.

When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, a court must assume the factual allegations in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). Moreover, the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply with equal force to Article III standing challenged on the face of the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (applying *Iqbal*). In other words, the complaint must clearly allege each element of standing with "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1092 (9th Cir. 2020).

## IV. DISCUSSION

Three of Defendants and Defendant-Intervenors' motions challenge Plaintiff's constitutional standing to maintain this lawsuit. (CA Mot. 11–13; ACEF Mot. 9–10; HWA Mot. 11.)[1] And unlike with the chickens and eggs at issue here, there is no question that an analysis of standing must come first. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) ("[J]urisdiction generally must precede merits in dispositional order[.]"); *Carijano v. Occidental Petrol. Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011) ("Article III standing is a species of subject matter jurisdiction.").

---

[1] Association of California Egg Farmers moves for summary judgment on the standing issue, noting that "the United States has submitted no evidence of any kind showing injury arising from the challenged California laws." (ACEF Reply 2.) Because the standing problem here may be an issue of pleading and not of proof, the Court does not resolve the Association's motion but has considered its standing arguments.

4

"Under Article III of the Constitution, a plaintiff needs a 'personal stake' in the case." *Biden v. Nebraska*, 600 U.S. 477, 489 (2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "Standing . . . 'tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)). "[F]ederal courts do not issue advisory opinions about the law—even when requested by the President." *Id.* at 378–79. This principle extends to the federal government at large, which similarly must establish its standing to bring a civil suit in federal court. *United States v. San Jacinto Tin Co.*, 125 U.S. 273, 285 (1888). Because the United States "is not the target of the challenged government action," as it does not allege it is a participant in the egg marketplace to which the subject California laws and regulations apply, the federal government's ability to bring suit is "'substantially more difficult to establish.'" *United States v. City of Arcata*, 629 F.3d 986, 989 (9th Cir. 2010) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992)).

"'[T]he irreducible constitutional minimum of standing contains three elements': injury in fact, causation, and redressability." *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025) (quoting *Lujan*, 504 U.S. at 560). The United States fails to plead facts toward any of the elements. In its briefs, the federal government asserts that it "is suffering an ongoing injury to its sovereignty because the Sales Ban and Labeling Requirements violate the EPIA and are expressly preempted." (USA Mot. 9.) Questioned at the hearing about where the United States articulated its sovereign injury theory in the complaint, counsel merely pointed to allegations that the EPIA preempts the California laws and regulations at issue. (FAC ¶¶ 59, 63, 66.) Not only are these allegations undisguised legal conclusions in search of substantiating facts, but they also raise no inferences about the sovereign injury asserted in Plaintiff's briefing, depriving

Defendants and Defendant-Intervenors of adequate notice of the federal government's standing theory. *See* Fed. R. Civ. P. 8(a)(1). As an illustrative contrast, Plaintiff offers numerous allegations that the subject laws and regulations harm working-class Americans by effectively inflating egg prices, (FAC ¶¶ 1–2, 5, 8),[2] but nowhere in the complaint does Plaintiff provide any facts raising an inference that California's laws and regulations diminish the sovereignty of the federal government.

Plaintiff comes closest to articulating its sovereign injury theory in alleging that Congress exercised its authority under the Supremacy Clause to enact a preemption provision in the EPIA, and that California nonetheless maintains allegedly preempted laws and regulations. (*Id.* ¶ 7.) But Plaintiff presents no binding authority holding that the mere *existence* of a preempted state law creates a sovereign injury to the federal government.[3] Instead, the Supreme Court has "long recognized that state laws that conflict with federal law are without effect." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (internal quotation marks omitted). From this principle flows the proposition that, if Plaintiff's preemption theory is correct, the existence of California's laws and regulations governing egg sales and distribution in and of themselves do not harm

---

[2] This, of course, does not satisfy the injury-in-fact requirement. *Carney v. Adams*, 592 U.S. 53, 59 (2020) ("[A] plaintiff cannot establish standing by asserting an abstract general interest common to all members of the public, no matter how sincere or deeply committed a plaintiff is to vindicating that general interest on behalf of the public." (internal quotation marks and citations omitted)).

[3] To be sure, there are any number of state laws currently on the books that conflict with the United States Constitution and federal law as interpreted by the Supreme Court. *Compare, e.g.*, D.C. Code § 22-4506(a) (authorizing police chief to issue a concealed-carry license "if it appears that the applicant has good reason to fear injury to his or her person or property or has any other proper reason for carrying a pistol"), *with N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 15, 71 (2022) (deeming unconstitutional New York's proper-cause requirement for concealed-carry license, of which the District of Columbia's requirement is an analogue), *and* Tex. Fam. Code Ann. § 2.001(b) ("A [marriage] license may not be issued for the marriage of persons of the same sex."), *with Obergefell v. Hodges*, 576 U.S. 644, 681 (2015) ("[S]ame-sex couples may exercise the fundamental right to marry in all States.").

6

Plaintiff because they are illusory. Perhaps California's *enforcement* of the subject laws and regulations could give rise to an injury in fact by impeding the operations or functions of the federal government, but Plaintiff neither pleads nor presents such a theory. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." (internal quotation marks omitted)); *cf., e.g., United States v. King County*, 122 F.4th 740, 751 (9th Cir. 2024) (finding the United States demonstrated injury in fact where there was a "substantial risk that the County will formally prohibit Boeing Field [fixed base operators] from servicing [Immigration and Customs Enforcement] charter flights"); *United States v. Mattson*, 600 F.2d 1295, 1298–99 (9th Cir. 1979) (observing that "there has been no assertion of a property interest, interference with national security or a burden on interstate commerce" in concluding the United States had not demonstrated standing).

In any event, Plaintiff's understanding that California "violate[d]" the EPIA and the Supremacy Clause by enacting and promulgating the subject laws and regulations, (FAC ¶¶ 59, 63, 66), "is a mistake," *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 478 (2018). The Supreme Court teaches that preemption provisions like 21 U.S.C. § 1052(b) "might appear to operate directly on the States" based on their phrasing, but they instead should be read to "confer[] on private entities . . . a federal right to engage in certain conduct subject only to certain (federal) constraints." *Id.* at 478–79 (construing a preemption provision of the Airline Deregulation Act of 1978 that provided that "no State . . . shall enact or enforce any law . . . relating to rates, routes, or services of any [covered] air carrier" (alteration in original) (internal quotation marks omitted)). This is because preemption principles derived from the Supremacy Clause "provide[] a rule of decision," not "an independent grant of legislative power to Congress." *Id.* at 477 (internal quotation marks omitted). "[S]ince the Constitution confers upon Congress the power to regulate individuals, not States, the [preemption] provision at issue must be best read as one that regulates private actors." *Id.* (internal

7

quotation marks and citation omitted). Thus, authorities providing that the United States may assert an "injury to its sovereignty arising from violation of its laws," *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000), are inapposite, as, under *Murphy*, the preemption provision the United States invokes is neither directed to nor violable by any State, and the Supremacy Clause does not itself conjure a substantive right that Congress or the United States may vindicate through suit. *See Mattson*, 600 F.2d at 1300 ("[T]hese [standing] requirements cannot be evaded by an assertion of nonstatutory authority.").[4]

Rejecting Plaintiff's sovereign injury theory aligns with sound jurisprudence. Suppose the United States suffered a constitutional injury any time federal law preempts state law. Should the United States be permitted—or perhaps even *required*—to participate in a civil suit between private parties every time a defendant moves to dismiss a claim based on federal preemption? *See* Fed. Rs. Civ. P. 19(a), 24(a)–(b). Surely the limited resources of the United States Attorney's Office would be better expended prosecuting violations of federal criminal laws and protecting federal civil

---

[4] At oral argument and in its reply brief, counsel compared the sovereign injury theory Plaintiff advances here to the sovereign injury that undergirds any federal criminal prosecution. (*See* USA Reply 2); *see also Vt. Agency of Nat Res.*, 529 U.S. at 771 (noting in dicta that "the injury to [the United States'] sovereignty arising from violation of its laws . . . suffices to support a criminal lawsuit by the Government"). The United States' standing to prosecute criminal cases hardly provides a persuasive analogy, as legal scholars long have puzzled over the application of standing doctrine to criminal cases. *See, e.g.*, F. Andrew Hessick & Sarah A. Benecky, *Standing and Criminal Law*, 49 BYU L. Rev. 961, 976 (2024) ("The Court has never seriously grappled with how the United States satisfies Article III's concrete and particularized injury requirement when it brings a criminal prosecution. . . . [I]t is difficult to see how violations of sovereignty are sufficiently concrete to support standing."); Edward A. Hartnett, *The Standing of the United States: How Criminal Prosecutions Show that Standing Doctrine Is Looking for Answers in All the Wrong Places*, 97 Mich. L. Rev. 2239, 2248 (1999) ("[I]f current standing doctrine is correct, then the vast majority of federal criminal prosecutions are not 'cases' or 'controversies' and the United States lacks standing to initiate them.").

rights than, say, weighing in on whether federal law preempts state law false advertising claims concerning toothpaste packaging. *E.g.*, *Cross v. Haleon US, Inc.*, No. 2:24-cv-09325-MCS-PVC, 2025 U.S. Dist. LEXIS 138175, at *4–8 (C.D. Cal. July 11, 2025) (Scarsi, J.). Further, suppose the executive or the decisionmakers at the Department of Justice simply do not like a state law because it is in tension with their policies. Without requiring the United States to show some redressable injury, the federal government might initiate a campaign of preemption suits under the aegis of its sovereignty to bring state laws in line with its own political agenda. The potential for abuse of the federal courts for political purposes is manifest. Standing doctrine provides a valuable safeguard. *See All. for Hippocratic Med.*, 602 U.S. at 380 ("By limiting who can sue, the standing requirement implements the Framers' concept of the proper—and properly limited—role of the courts in a democratic society. . . . And the standing requirement means that the federal courts may never need to decide some contested legal questions: Our system of government leaves many crucial decisions to the political processes, where democratic debate can occur and a wide variety of interests and views can be weighed." (internal quotation marks omitted)).

Plaintiff has not pleaded facts showing it has standing to maintain this lawsuit, and the theory of standing it asserts in its briefing is incognizable. The motions to dismiss are granted insofar as the movants assert Plaintiff fails to allege facts demonstrating its constitutional standing. Because this is a threshold defect that alone demands dismissal of the first amended complaint, the Court does not reach any other issue presented in the motions. Although Plaintiff put all its eggs in the sovereign-injury theory of standing, other standing theories may be articulable on repleading. Given the Ninth Circuit policy of granting leave to amend "with extreme liberality," *Jensen v. Brown*, 131 F.4th 677, 701 (9th Cir. 2025) (internal quotation marks omitted), the Court grants Plaintiff leave to amend.

///

9

## V. CONCLUSION

The Court dismisses the complaint for want of standing. Plaintiff may file a further amended complaint within 14 days of entry of this Order provided that it can do so in accordance with Federal Rule of Civil Procedure 11(b) and this Order. Plaintiff's amended complaint must be accompanied by a redline version tracking all changes. (Initial Standing Order § 10(a), ECF No. 13.) Leave to add new parties or claims must be sought by a separate, properly noticed motion. Failure to file a timely amended complaint—or a notice that Plaintiff stands by the dismissed complaint and consents to entry of an appealable judgment—will result in dismissal for lack of prosecution without further warning.

The Court suspends Defendants and Defendant-Intervenors' obligation to respond to any amended complaint. Instead, within 14 days of the filing of an amended complaint, the parties shall confer and file a joint statement (1) indicating whether Defendants or Defendant-Intervenors intend to challenge the amended complaint on the basis of standing or any ground not presented in the motions previously filed and (2) if so, proposing a schedule for motion practice—and discovery, if appropriate.

///

10

The parties thoroughly briefed the issues that the Court did not reach in this Order, and the parties suggested at the hearing that they do not need merits discovery. In the interest of conserving party and court resources, absent a further order of the Court upon a stipulation or motion by the parties, the Court will not take further briefing on those issues. Should Defendants and Defendant-Intervenors elect not to challenge the amended complaint on the basis of standing or a new ground, or should the Court reject such challenges to the amended complaint, the Court will administratively reopen the motions addressed in this Order and evaluate the parties' positions presented therein.

**IT IS SO ORDERED.**

Dated: March 18, 2026

_____

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

11