**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

| | |
|---|---|
| UNITED STATES OF AMERICA and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>*Plaintiffs*,<br><br>v.<br><br>STATE OF VERMONT, et al.,<br><br>*Defendants*,<br><br>and<br><br>NORTHEAST ORGANIC FARMING ASSOCIATION OF VERMONT and CONSERVATION LAW FOUNDATION,<br><br>*Intervenor-Defendants*. | No. 2:25-cv-00463 |

**INTERVENOR-DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

The decisions in *West Virginia v. James*, 1:25-cv-00168 (BKS/DJS) (N.D.N.Y. Aug. 31, 2026), ECF No. 318 ("*James* Op."), and *United States v. New York*, 1:25-cv-03656 (PKC) (S.D.N.Y. Sept. 23, 2026), ECF No. 117 ("*New York* Op.") are wrongly decided and should not be followed here.[1] Both decisions erred in extending the holding in *City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021), to a new context and drastically expanded *City of New York* in ways that contravene Supreme Court precedent governing statutory and foreign affairs preemption. First, they disregard the significant differences between a one-time retroactive assessment and tort claims seeking damages related to climate change. Second, *James* goes

[1] The United States filed a Notice of Supplemental Authority regarding *James*. *See* ECF No. 90. While the United States has not yet filed a notice regarding *New York*, that decision was filed as a Notice of Supplemental Authority in the companion case. *See* ECF No. 169 (Case No. 2:24-cv-01513-MKL). Intervenor-Defendants are responding to both decisions here for completeness.

further, erroneously concluding that courts may depart from binding statutory preemption principles whenever the "presumption against preemption" does not apply. Third, both decisions expand the rarely invoked doctrine of foreign affairs field preemption to cover any state law that (purportedly) could "complicate" federal foreign policy. Finally, *New York* goes far beyond existing law on sovereign standing by permitting the United States to sue to enjoin a state law without pointing to a concrete violation of or interference with federal law.

***First***, *City of New York's* preemption analysis and holding should not be extended beyond the common-law tort claims at issue there. *See* ECF No. 43-1 at 33-39; ECF No. 57-1 at 33-37; ECF No. 68 at 14-18. *City of New York* addressed "whether a *nuisance suit seeking to recover damages* for the harms caused by global greenhouse gas emissions may proceed under New York law." 993 F.3d at 91 (emphasis added). *James* and *New York* wrongly expanded this holding to apply to a statutory one-time retroactive assessment, which cannot amount to a regulation of emissions. Plaintiffs in the companion case, Chamber of Commerce and American Petroleum Institute, concede (as they must) that "[n]othing energy producers can do today can affect their liability under the Act." Compl. ¶ 161, *Chamber of Com. v. James*, No. 1:25-cv-1307 (BKS/DJS) (N.D.N.Y. Feb. 28, 2025), ECF No. 1; ECF No. 57-1 at 4-5 & n.4; ECF No. 68 at 16 & n.19.

The lack of any prospective effect is a critical difference between the Act and the tort claims at issue in *City of New York. See* ECF No. 43-1 at 37-39; ECF No. 57-1 at 4-9, 36-37; ECF No. 68 at 2-5, 14-17 & nn.15-16. Tort law establishes ongoing standards of care—which is why the *City of New York* court assumed that tort claims would lead to "ongoing liability." 993 F.3d at 93. In concluding that a "significant damages award" could compel a "new 'means of pollution control,'" the court relied on a tort case. *Id.* (quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 498 n.10 (1987)). The plaintiff in *City of New York* conceded that the tort damages it

sought could work production-side changes, and the court found that the only way for the defendants to avoid future tort liability would be to cease production. *See id.*

It was for this reason that *City of New York* found that the tort claims at issue were "previously governed by federal common law," 993 F.3d at 99—specifically, the federal common law that applied when a state brought a nuisance action "to abate pollution emanating from another State," *Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 421 (2011). *James* and *New York* recognized that whether the claims were "previously governed by federal common law" was a predicate for *City of New York*'s holding, *James* Op. 50; *New York* Op. 22, yet nowhere analyzed how this predicate was satisfied for the New York Act. It is not: The one-time retroactive assessments imposed by the New York and Vermont Acts, which do not control emissions and impose no ongoing duty of care, are far removed from this body of federal common law. *See* ECF No. 43-1 at 34-37; ECF No. 57-1 at 34-35; ECF No. 68 at 17-18.

*James* and *New York* also fail to explain how a purely retroactive assessment could be regulatory. The courts merely equate New York's cost recovery demands with "damages" and hold that "damages" can have regulatory effects. *See James* Op. 43-46; *New York* Op. 23-25. Neither case cites any authority supporting the proposition that a one-time retroactive cost assessment imposed by a legislature regulates future emissions as a matter of law or regulates future conduct.

Even if the Act's putative indirect forward-looking impacts on fossil fuel production could amount to regulation—which they cannot, *see* ECF No. 57-1 at 4-6; ECF No. 68 at 2-3—Defendants here, as in New York, have proffered expert economic testimony disputing Plaintiffs' claims regarding potential future impacts of the Act. The *James* court wrongly disregarded such evidence as "not material." *James* Op. 46 n.23. As the declaration explains, under widely

accepted economic principles, rational economic actors would not react to the Act's cost assessments by changing their future pricing or production. ECF No. 57-1 at 8-9 (citing Fullerton Decl. ¶¶ 11, 21-35). The *New York* court faults the testimony for speculating about the actions of third parties, *New York* Op. 25, but it is *Plaintiffs* (who bear the burden of establishing an impact) who speculated that third parties might irrationally change prices or output. There was no basis for the *New York* court to have accepted Plaintiffs' speculation, nor should this Court. Indeed, the Court received declarations from executives at four of the nation's largest fossil fuel companies, and none claimed that their companies would alter prices or production as a result of the Act. ECF No. 57-1 at 6-7; ECF No. 68 at 4.

In addition, the sizes of the assessments under the Vermont Act are unknown. While the New York Act sets the total cost recovery amount at $75 billion, the Vermont Act requires the State to first complete a report on the cost to Vermont of covered greenhouse gas emissions, Vt. Stat. Ann. tit. 10, § 599c, and then determine which portion of that total cost is attributable to responsible parties and apportion that subset of the total cost among responsible parties, *see id.* § 598(b). Because the cost recovery demands are unknown and Plaintiffs' claims of future impacts are disputed by competent evidence, the Court cannot hold, on summary judgment, that the Vermont Act's assessments will have any regulatory effect.

Further, *James* and *New York* miss the importance of *Hencely v. Fluor Corp.*, which reiterates that "there is no federal pre-emption *in vacuo*, without a constitutional text or a federal statute to assert it" and that "federal restrictions or rights that are said to conflict with state law must stem from either the Constitution itself or a valid statute enacted by Congress." 146 S. Ct. 1086, 1093 (2026) (cleaned up). *James* and *New York* cannot be reconciled with *Hencely's* emphasis on textual analysis. Neither identifies any constitutional provision that preempts the

New York Act; concludes that federal common law preempts the Act; or identifies any basis for field or conflict preemption by the Clean Air Act. *James* Op. 49-50, 54-56; *New York* Op. 23-28. They hold only that the Clean Air Act does not expressly "authorize[]" the New York Act, *James* Op. 55; *New York* Op. 28, which is not a proper application of settled preemption law.

***Second,*** *James* gets statutory preemption analysis wrong. At the outset*, James* (and *New York*) should have applied the presumption against preemption: The New York Act, like the Vermont Act, falls within state sovereign powers to raise revenue to protect the health and safety of its citizens. *See* ECF No. 57-1 at 32-33; ECF No. 43-1 at 4-6. Beyond that, *James* wrongly holds that courts are "not required to conduct a 'traditional statutory preemption analysis'" whenever the presumption against preemption does not apply. *James* Op. 54. This goes far beyond *City of New York*'s limited holding and is in direct conflict with longstanding Supreme Court precedent. Even where courts determine the presumption does not apply, they nonetheless apply a standard statutory preemption analysis—meaning they analyze the federal statute to determine express, field, or conflict preemption. *See, e.g.*, *United States v. Locke*, 529 U.S. 89, 108-16 (2000) (looking to both whether conflict and field preemption should apply in analyzing state laws); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001) (concluding that state law fraud claims were preempted because they conflicted with federal law).[2] As the Second Circuit has explained, "the presumption against preemption usually goes to the weight to be given to the lack of an express statement overriding state law." *In re Trib. Co. Fraudulent Conv.*

[2] *James's* quote from *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947), *see James* Op. at 52, merely noted one way in which Congress may *overcome* the presumption against preemption: by legislating in "a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice*, 331 U.S. at 230. But neither that case nor any other cited by Plaintiffs or *James* supports the proposition that courts should flip the presumption on its head and assume a state statute is preempted.

*Litig.*, 946 F.3d 66, 82 (2d Cir. 2019). The absence of the presumption does not mean that a court is free to disregard the other steps of the preemption analysis. And it certainly does not mean that any state law not expressly authorized by a federal statute is automatically preempted.

*James's* holding to the contrary subverts the principle that preemption of state statutes is "always a matter of congressional intent." *Id.*; *see also* ECF No. 43-1 at 27-33; ECF No. 57-1 at 32, 37 n.32. Merely "[i]nvoking some brooding federal interest or appealing to a judicial policy preference" is "never . . . enough to win preemption of state law." *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (plurality op.). As *Hencely* confirms, Plaintiffs' failure to point to a specific "constitutional or statutory text," 146 S. Ct. at 1093, is fatal.

***Third***, *James* and *New York* erroneously expand the rarely invoked doctrine of foreign affairs field preemption to cover a state law that purportedly raises only "foreign policy concerns." *James* Op. 61-62; *New York* Op. 30. To be preempted under the doctrine, a state law must do more than have "some incidental or indirect effect in foreign countries," *Clark v. Allen*, 331 U.S. 503, 517 (1947), but must in fact be "establish[ing] its own foreign policy," *Zschernig v. Miller*, 389 U.S. 429, 441 (1968). For example, *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067 (9th Cir. 2012) (en banc), on which *James* and *New York* relied, involved a state law that "expresse[d] a distinct political point of view" on foreign countries' conduct by providing "a friendly forum for [only] those who suffered from certain foreign events." *Id.* at 1075-76; *see also* ECF No. 57-1 at 59 (explaining that Plaintiffs' cited field preemption cases all feature states taking sides in a foreign policy conflict).

*James* and *New York* relied on *City of New York*'s observation that permitting federal common law nuisance claims to proceed against producers, especially foreign producers, for "purely foreign activity" could "complicate" foreign policy. *James* Op. 60 (quoting *City of New*

*York*, 993 F.3d at 101-03); *New York* Op. 33 (similar). But that says nothing about whether a state law that applies equally to domestic and foreign companies and can only affect foreign companies that have sufficient connections to Vermont amounts to a state "establish[ing] its own foreign policy." *Zschernig*, 389 U.S. at 441. And *City of New York's* animating concern was that applying *"judge-made*" rules to foreign emissions (*see* 993 F.3d at 101 (emphasis added)) could create separation of powers problems—a concern that does not apply to a state statute.

Before *James* and *New York*, no court had applied foreign affairs field preemption to invalidate a state law that addresses a state problem and treats domestic and foreign companies identically. This Court should not follow this mistaken analysis.

***Fourth***, *New York* erred in finding that the United States had standing to bring its preemption claims despite its failure to identify any specific violation of, or concrete interference with the enforcement of, federal law. Intervenor-Defendants do not dispute that the United States may have a "sovereign interest" in "creat[ing] and enforc[ing] a legal code." *New York* Op. 9 (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601 (1982)). But *New York* did not discuss a single case involving an *injury* to that interest, relying solely on authority finding *parens patriae* standing. *Id*. at 9-10 & n.2 (citing *Snapp*, 458 U.S. at 601 and *Massachusetts v. E.P.A.*, 549 U.S. 497, 519, 521-26 (2007)). It thus ignored that for the United States to suffer an injury to its sovereign interest, it must point to specific ways in which the state law impairs or interferes with its enforcement of federal law. ECF No. 43-1 at 12; ECF No. 57-1 at 16-17; ECF No. 68 at 8; ECF No. 80. And to the extent the United States could have standing based on the Act's purported indirect interference with "EPA's authority to set and enforce a regulatory scheme," *New York* Op. 10, whether the Act will actually do so is a question of fact

and one on which Plaintiffs have not met their burden on summary judgment. ECF No. 57-1 at 16-17; ECF No. 68 at 8-9.

*New York's* holding that the United States had standing to bring its foreign affairs preemption claims also goes far beyond existing precedent. *Tachiona v. United States*, 386 F.3d 205 (2d Cir. 2004), on which *New York* relied, found that the United States had standing to appeal a district court decision that "interfered in a direct, articulable way with [federal foreign affairs] authority" by "placing the United States in breach of its international [treaty] obligations" and "violat[ing] executive norms and treaty obligations" governing "terms upon which foreign diplomats are received." *Id*. at 212-14. The United States's theory that the Act may indirectly interfere with global climate change policy falls far short of the "direct, articulable" interference with specific treaties and norms identified in *Tachiona*.

Under *New York's* conception of sovereign standing, the federal government can seek to enjoin any state law that it disagrees with merely by pleading preemption. This Court should hold the United States to the same standard as any other litigant and require it to show a concrete and imminent injury to its sovereign interest.

Dated: October 1, 2026

Respectfully submitted,

*/s/ Bridget Asay*

Bridget Asay
Michael Donofrio
STRIS & MAHER LLP
15 East State Street, Suite 2
Montpelier, VT 05602
Phone: (802) 858-4285
basay@stris.com

*Counsel for Northeast Organic Farming Association of Vermont*

*/s/ Adeline S. Rolnick*
Adeline S. Rolnick
Natural Resources Defense Council, Inc.
1152 15th Street, Suite 300
Washington, DC 20005
Phone: (202) 513-6240
arolnick@nrdc.org

Mitchell S. Bernard
Natural Resources Defense Council, Inc.
40 West 20th Street, 11th Floor
New York, NY 10011
Phone: (212) 727-4469
mbernard@nrdc.org

*Counsel for Northeast Organic Farming Association of Vermont and Conservation Law Foundation*

*/s/ Elena M. Mihaly*
Elena M. Mihaly
Conservation Law Foundation, Inc.
15 East State Street, Ste. 4
Montpelier, VT 05602
Phone: (802) 622-3012
emihaly@clf.org

*Counsel for Conservation Law Foundation*