**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA and AMERICAN PETROLEUM INSTITUTE,<br>Plaintiffs,<br>and<br><br>STATE OF WEST VIRGINIA et al.,<br>Intervenor-Plaintiffs,<br>v.<br><br>JULIE MOORE et al.<br>Defendants,<br>and<br><br>NORTHEAST ORGANIC FARMING ASSOCIATION OF VERMONT and CONSERVATION LAW FOUNDATION,<br>Intervenor-Defendants. | Case No. 2:24-cv-01513 |
| UNITED STATES OF AMERICA and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br>Plaintiffs,<br>v.<br><br>STATE OF VERMONT et al.,<br>Defendants,<br>and<br><br>NORTHEAST ORGANIC FARMING ASSOCIATION OF VERMONT and CONSERVATION LAW FOUNDATION,<br>Intervenor-Defendants. | Case No. 2:25-cv-00463 |

**STATE DEFENDANTS' RESPONSE TO**
**PLAINTIFFS' NOTICES OF SUPPLEMENTAL AUTHORITY**
**(Chamber Case ECF No. 169; U.S. Case ECF No. 94)**

The Southern District of New York's recent decision in *United States v. New York*, No. 1:25-cv-03656-PKC, 2026 WL 2859471 (S.D.N.Y. Sept. 23, 2026)—like the Northern District of New York's decision in *West Virginia v. James*, No. 1:25-cv-00168, 2026 WL 2568355 (N.D.N.Y. Aug. 31, 2026)—was wrongly decided and further illustrates why the Plaintiffs' preemption claims fail here. *See also* State Defs.' Resp. to Pls.' Notice of Supp. Auth. (Chamber Case ECF No. 164; U.S. Case ECF No. 91) (describing similar analytical flaws in *James*). This Court should not follow *James* and *New York*.

**1.** Like *James, New York* misapplied well-established common law preemption principles by relieving Plaintiffs of their burden to show that New York's Climate Act will—no matter how it is implemented—conflict with federal law. As discussed in the State's filings, even when a state law operates in an area of federal common law,[1] a party advocating preemption must do more than advance "generalized pleas for uniformity." *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 730 (1979). For federal law to preempt state law, a "significant conflict" must exist between the two. *Hencely v. Fluor Corp.*, 608 U.S. 31, 146 S. Ct. 1086, 1094 (2026) (internal quotation omitted). And in a facial challenge, it is not enough to show that such a conflict *could* exist for *some* implementations of the law. A party asserting preemption must demonstrate that a conflict necessarily *will* exist for *all* implementations of the law. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-50 (2008) (challenger must show "no set of circumstances exists under which the law would be valid" (internal quotation omitted)); *Rest. L. Ctr. v. City of New York*, 90 F.4th 101, 117 (2d Cir. 2024) (facial preemption

[1] Again, Vermont does not concede that laws like the New York Climate Act and Act 122 operate in an area of traditional federal authority. *See*, *e.g.*, Vt. MTD at 33-34 (Chamber Case ECF No. 76-1; U.S. Case ECF No. 35-1); Vt. SJ Reply at 7 (Chamber Case ECF No. 128; U.S. Case ECF No. 69).

challenge requires showing that "there is no possible set of conditions under which the challenged state regime could be constitutional" (internal quotation and alteration omitted)).

The *New York* court failed to follow these principles. Instead of looking for an actual conflict, the court assumed that since New York's Climate Act "works much the same way as the tort claims in *City of New York*," New York's law likewise must fail. 2026 WL 2859471, at *12 (citing *City of New York v. Chevron Corp*., 993 F.3d 81 (2d Cir. 2021)). The court did not examine whether the key factual assumption on which *City of New York*'s conflict ruling was based—i.e., that tort claims influence behavior in ways that could interfere with federal emissions regulation—applies in the context of New York's Climate Act. Indeed, the court acknowledged that the Climate Act's regulatory impacts, if any, were unclear. 2026 WL 2859471, at *12 (observing that Climate Act's proclivity to influence behavior depended on "future actions of yet-to-be-identified actors").

*New York's* treatment of this observation as a reason to reject New York's expert evidence and find in favor of preemption, *id*., highlights the error in its analysis. Even if regulatory impacts were determinative,[2] Plaintiffs still must show the Act will, in all cases, conflict with federal regulatory interests. *See Nat'l Shooting Sports Found. v. James*, 144 F.4th 98, 107-08 (2d Cir. 2025) ("Since Appellants have brought a facial constitutional challenge . . . they must establish that the law cannot be constitutionally applied against anyone in any situation."). It was not New York's burden—nor is it Vermont's in these cases—to prove the Act could *never* do so. *See Antonyuk v. James*, 120 F.4th 941, 987 (2d Cir. 2024) (denying facial

[2] As a matter of law, Vermont's Climate Superfund Act is not regulatory. *See* Vt. MTD/SJ Mem. at 12, 19-21, 24 (Chamber Case ECF No. 109; U.S. Case ECF No. 53); Vt. SJ Reply at 11-12 (Chamber Case ECF No. 128; U.S. Case ECF No. 69).

challenge to concealed carry law because "Plaintiffs assume that licensing officers will act in bad faith, but facial challenges require the opposite assumption").

Moreover, as New York and defendants in the Vermont cases have shown, a one-time, retroactive cost assessment imposed by a legislature differs materially from the tort claims at issue in *City of New York*. Again, the City's claims in that case were based on allegations of past, ongoing, and future wrongful conduct. *See* Am. Compl. ¶¶ 129-31 (ECF No. 80), *City of New York v. Chevron*, No. 1:18-cv-00182-JFK (S.D.N.Y. Mar. 16, 2018). That is why the Second Circuit was concerned that a "substantial damages award" would compel a "new 'means of pollution control.'" *City of New York*, 993 F.3d at 93 (quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 498 n.10 (1987)); *see also id.* (plaintiffs conceded that tort damages could incentivize "production-side changes").

The Chamber Plaintiffs, on the other hand, have previously admitted that "[n]othing energy producers can do today can affect their liability under the Act." Compl. ¶ 161 (ECF No. 1), *Chamber of Com. v. James*, No. 1:25-cv-1307 (N.D.N.Y. Feb. 28, 2025). Likewise, the West Virginia Plaintiffs admit that because cost recovery demands under the Act are based entirely on past conduct, no "energy producer deemed responsible can escape payment." W.Va. Compl. ¶ 171 (Chamber Case ECF No. 31). And the State has offered expert evidence in response to Plaintiffs' summary judgment filings confirming that the Climate Superfund Act is unlikely to influence production, emissions, or market behavior. *See* Decl. of Don Fullerton, Ph.D. ¶¶ 10-11 (Chamber Case ECF No. 109-3; U.S. Case ECF No. 53-2); *see generally* Reply Decl. of Don Fullerton, Ph.D. (Chamber Case ECF No. 128-01; U.S. Case ECF No. 69-2).[3] In view of all this,

[3] Despite the American Petroleum Institute's involvement in the Chamber case, Plaintiffs have not submitted any evidence from fossil fuel companies explaining whether or how the Act will influence production or prices. The closest any of them have come is a declaration from an

it would be inappropriate for the Court to simply assume that cost recovery demands under the Act will raise the same types of regulatory concerns animating *City of New York*. *See Wash. State Grange*, 552 U.S. at 444 (rejecting preemption argument based on "factual assumptions . . . that can only be evaluated in the context of an as-applied challenge").

Finally, even if it was appropriate for the *New York* court to speculate about future impacts in its analysis of the New York Climate Act, there is good reason for this Court not to extend *New York's* analysis to Act 122. Vermont—unlike New York—has not yet determined the magnitude of the overall cost recovery it will seek. *Compare* Vt. Stat. Ann. tit. 10, § 599c, *with* N.Y. Env't Conserv. Law § 76-0101(6). Thus, a finding of facial preemption on grounds of regulatory conflict would require an additional layer of speculation about the magnitude of the law's impacts: the *New York* court had to speculate about the economic impact of an individual cost recovery demand on an individual fossil fuel producer, but not the economic impact of the total recovery on all producers (set in New York's statute at $75 billion); here, the Court would need to speculate not only about future impacts of an unknown total recovery, but also about the magnitude of individual cost recovery demands based on that total. *See Wash. State Grange*, 552 U.S. at 449-50 (cautioning against speculating "about 'hypothetical' or 'imaginary' cases" in evaluating a facial challenge (citation omitted)).

**2.** More fundamentally, like *James*, *New York* conflicts with settled Supreme Court precedent governing statutory preemption analysis. *New York* held that New York's Climate Act

---

ExxonMobil executive observing that the "funds to make [the cost recovery demand] payment would have to come from somewhere," which would require "energy producers like ExxonMobil to make strategic business decisions about capital investments, production volumes, planning, prices, contracts, and personnel." Decl. of Vijay Swarup ¶ 27 (Chamber Case ECF No. 100-06). Contrary to that vague observation, Dr. Fullerton has explained why cost recovery demands are, as a matter of basic economic theory, unlikely to impact fossil fuel production or pricing. *See generally* Fullerton Decl.

was preempted by the Clean Air Act. 2026 WL 2859471, at *6 ("The Clean Air Act Preempts New York's Climate Act."), *14 (granting summary judgment to United States on "Clean Air Act preemption claim"). In so doing, *New York* (like *James*) created a new statutory preemption test whereby, any time a court concludes "federal interests and federal law" should govern a dispute, *id.* at *13, Congress must *affirmatively authorize* state action in the relevant federal statute, *see id.* at *10 ("The application of this analysis leads to the conclusion that, because the Clean Air Act has not authorized states to adopt legislation of the sort challenged here, New York's Climate Act is preempted."). That has never been how preemption works.

Contrary to the *New York* court's suggestion that it was following *City of New York* on this point, *see id.* at *10 ("The analysis in *City of New York* controls here."), *City of New York* did *not* hold that the Clean Air Act preempted the City's claims. The Second Circuit neither conducted a "traditional statutory preemption analysis" nor purported to do away with that traditional analysis. *City of New York*, 993 F.3d at 98. *City of New York* is best understood as a narrow application of federal common law displacement of state common law tort claims. *See id.* at 89 (framing issue as whether "The City's State-Law Tort Claims Are Displaced by Federal Common Law"); Vt. SJ Reply at 7 (Chamber Case ECF No. 128; U.S. Case ECF No. 69) (demonstrating why *City of New York* did not change statutory preemption analysis). As the State has explained at length, Vermont's Climate Superfund Act is not preempted by the Clean Air Act under the actual test for statutory preemption. *See* Vt. MTD at 35-42 (Chamber Case ECF No. 76-1; U.S. Case ECF No. 35-1); Vt. MTD/SJ Mem. at 16-21 (Chamber Case ECF No. 109; U.S. Case ECF No. 53); Vt. SJ Reply at 5-10 (Chamber Case ECF No. 128; U.S. Case ECF No. 69).

*New York* applied *City of New York*'s federal common law displacement test to New York's Climate Act and called it Clean Air Act preemption. That was error. This Court should

not follow *New York's* lead in creating a novel statutory preemption analysis that conflicts with well-established precedent.

Finally, in addition to not being preempted by the Clean Air Act, Vermont's Climate Superfund Act is distinguishable from *City of New York*. *See supra* at 1-5; Vt. MTD at 31-34 (Chamber Case ECF No. 76-1; U.S. Case ECF No. 35-1); Vt. MTD/SJ Mem. at 22-25 (Chamber Case ECF No. 109; U.S. Case ECF No. 53); Vt. SJ Reply at 11-13 (Chamber Case ECF No. 128; U.S. Case ECF No. 69). The Court should dismiss these cases.

DATED November 10, 2025

Respectfully submitted,

STATE OF VERMONT

CHARITY R. CLARK
ATTORNEY GENERAL

By: */s/ Jonathan T. Rose*
JONATHAN T. ROSE
*Solicitor General*
LAURA B. MURPHY
*Director, Environmental Protection Unit*
HANNAH W. YINDRA
SAMUEL B. STRATTON
*Assistant Attorneys General*
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-3186
jonathan.rose@vermont.gov
laura.murphy@vermont.gov
hannah.yindra@vermont.gov
sam.stratton@vermont.gov